UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cr-364-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CLARENCE ANTWAINE ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant Clarence Antwaine Adams's Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 44). Defendant is represented by Elizabeth Budnitz. The Government has responded in opposition to the motion, (Doc. No. 49), and Defendant has filed a Reply. (Doc. No. 50). For the following reasons, Defendant's motion will be **DENIED**.

**I.  BACKGROUND**

From 2015, shortly after his release from prison for drug trafficking, to July 2019, Defendant participated in a conspiracy to distribute and to possess with intent to distribute controlled substances. (Doc. No. 17 ¶¶ 10, 14 (PSR); Doc. No. 32, at 13–14 (Sent. Tr.)). Law enforcement confirmed Defendant's activities through surveillance and information from several credible and reliable cooperating defendants and confidential informants. (PSR ¶ 14). Defendant placed residences and vehicles under family members' and girlfriends' names to evade detection by law enforcement. (Id.). Beginning in late 2018, investigators frequently observed Defendant leave his home, meet with a co-conspirator[1] at a "stash house," stay for a short time, and then

---

[1] Defendant referred to this co-conspirator as "nephew," but he apparently was a cousin. (Sent. Tr. 23).

1

leave with a bag or suitcase. (Id. ¶ 15). On numerous occasions, the co-conspirator then drove to a known "trap house"[2] and met with several other co-conspirators. (Id.). Law enforcement conducted drug purchases from one or more of these co-conspirators after they left the trap house. (Id.).

In early December 2018, investigators saw Defendant leave his home, meet a co-conspirator at a stash house, and leave shortly thereafter with a duffle bag. (Id. ¶ 16). The co-conspirator then drove to a trap house, where he and other co-conspirators took three large bags from his car inside the house. (Id.). Shortly thereafter, officers stopped a car that had left the trap house and seized over 1,000 grams of marijuana. (Id.). Defendant met with a co-conspirator at the trap house a few hours later. (Id.). In July 2019, officers executed a search warrant at Defendant's home. (Id. ¶ 18). They seized over $3,000 in cash, a money counter, ledgers of apparent drug transactions, 15 ecstasy pills, and four cell phones. (Id.). At another property used by Defendant, officers found a loaded handgun under a bed and, in a bag in a closet with Defendant's mail, they found a revolver and two pounds of marijuana. (Id. ¶ 19).

A grand jury indicted Defendant, charging him with conspiracy to distribute and to possess with intent to distribute 280 grams or more of crack cocaine, 21 U.S.C. § 841(a), (b)(1)(A), 846; possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), (b)(1)(D); possession of a firearm in furtherance of a drug-trafficking offense, 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). (Indictment, United States v. Adams, No. 3:19CR210 (W.D.N.C. July 18, 2019), Doc. No. 7). The United States filed an Information pursuant to 21 U.S.C. § 851, noticing Defendant's prior federal conviction for

---

[2] A "trap house" is where co-conspirators meet, repackage drugs to distribution amounts, and often conduct drug sales with customers. (Sent. Tr. 14).

2

possession with intent to distribute cocaine. (Id., Doc. No. 15).

After engaging in plea negotiations, Defendant pled guilty to a bill of information charging him with conspiring to distribute and to possess with intent to distribute more than 700, but less than 1,000, kilograms of marijuana and possession with intent to distribute marijuana, in exchange for the dismissal of the charges in the indictment, including the cocaine and firearm charges. (Doc. No. 1; Doc. No. 4, ¶¶ 1–2 (Plea Agrmt.)). As part of the plea agreement, the United States agreed to withdraw the Section 851 Information as to the conspiracy count only, which would reduce the statutory range for the conspiracy charge from 10 years to life in prison to five to 40 years in prison. (Plea Agrmt. ¶ 5). The parties agreed to recommend to the Court that the amount of marijuana known or reasonably foreseeable to Defendant was more than 700 kilograms, but less than 1,000 kilograms, and that Defendant's guilty plea was timely for purposes of acceptance of responsibility. (Plea Agrmt. ¶ 8). A magistrate judge accepted Defendant's guilty plea following a plea hearing in accordance with Federal Rule of Criminal Procedure 11. (Doc. No. 7).

A probation officer prepared a presentence report, recommending that Defendant be sentenced at a base offense level of 28 and that he receive a two-level enhancement for possession of a firearm during the offense, a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, and a three-level enhancement for acting as a manager or supervisor for an offense involving five or more participants. (PSR ¶¶ 31–33, 35). Allowing a three-level reduction for acceptance of responsibility, his total offense level was 32. (Id. ¶ 41). Although Defendant had prior convictions, including for breaking or entering a motor vehicle, two counts of possession of a firearm by a felon, two counts of maintaining a vehicle or dwelling place for keeping and selling

3

controlled substances, and possession with intent to sell and distribute cocaine, he did not receive any criminal history points for those offenses due to their age. (Id. ¶¶ 44–52). Defendant earned three criminal history points for his 2007 federal conviction for possession with intent to distribute cocaine, which involved at least two kilograms of cocaine. (Id. ¶ 54). This Court sentenced him to 115 months in prison and three years of supervised release for that offense. (Id.). Defendant earned another two points for committing the instant offense while still serving his term of supervised release. (Id. ¶ 58). With a criminal history category of III, the Sentencing Guidelines advised a range of 151 to 188 months in prison. (Id. ¶ 96). Defendant objected to the three enhancements and denied using his family and girlfriends to place residences and vehicles in their names to evade detection by law enforcement. (PSR addnm. 22–25).

The Court held a sentencing hearing in August 2020. (Sent. Tr. 1). The United States presented testimony from Joseph Brogdon, the case agent and an officer with the Gastonia Police Department and the FBI Safe Streets Task Force. (Id. at 6–7). Agent Brogdon testified that he and other investigators had several informants who were able to make controlled drug purchases from several of Defendant's co-conspirators. (Id.). Defendant always used a broker when selling drugs. (Id. at 28). During controlled purchases in 2016 or 2017, officers observed Defendant stop three or four houses away and have his broker meet with the buyer/informant to get the drug money. (Id. at 28, 30). The broker would then meet with Defendant and return with "2 or 3 ounces of cocaine." (Id.). Multiple informants stated that Defendant had a Mexican connection for obtaining illegal narcotics. (Id. at 14). Over the course of the investigation, Defendant frequented approximately 20 residences where he would show up with a duffel bag or suitcase, use a key to enter the residence, often meet with a co-conspirator, and each would leave 10 minutes to a half hour later with a suitcase or duffel bag. (Id. at 9). Defendant would then drive

to other properties where he met with other co-conspirators whom law enforcement was able to buy "large amounts of cocaine and crack cocaine from." (Id.). Agent Brogdon testified that Defendant was at the home where the firearms were found "on an almost daily basis," that he kept numerous vehicles there, and that he carried duffel bags and suitcases from those vehicles inside the home. (Id. at 36). Agent Brogdon also testified that Defendant would change cars three or four times a day during surveillance. (Id. at 12). Although Defendant claimed to have a car-related business, the North Carolina Employment Security Commission reported that since January 2016, Defendant did not have a job. (Id. at 12–13).

Defendant called his former girlfriend, Jeriree Gordon, to testify. (Sent. Tr. 37). Gordon claimed that both firearms found in her home belonged to her, although she was not the registered owner. (Id. at 42–43, 47). She denied telling the agent she spoke with during the execution of the search warrant at her home that she did not know anything about the marijuana or the firearm found in the closet. (Id. at 43–44, 47–49). She also said that the marijuana was about six feet away from the gun and not in the closet. (Id.).

The Court overruled Defendant's objections to the enhancements for his role in the offense and for maintaining a premises for the purpose of manufacturing or distributing a controlled substance but sustained his objection to the firearm enhancement. (Sent. Tr. 59, 61–62). The Court found that the guideline range was 121 to 151 months in prison. (Id. at 63).

Defendant argued for a below guidelines sentence, stating that he had a difficult upbringing but now had family support. (Sent. Tr. 63–64). Defendant asserted that he did not do "enough at the time" he served his prior federal sentence "to really better himself." (Id. at 64). He noted that he had contracted COVID-19 while in jail and that there was a point when "he didn't know which way it was going to go," but he had fully recovered. (Id. at 65). He argued

5

that the enhancements overstated his offense conduct. (Id. at 67–69). Defendant allocuted, telling the Court that he was 40 years old, had encountered difficult circumstances, but had been a good father after he was released from prison. (Id. at 70–72). He asserted that his goal for prison was "to get more professional counseling and to further my education by enrolling in a community college and taking classes." (Id. at 72).

The Court sentenced Defendant to 121 months in prison for the conspiracy offense and to a concurrent sentence of 120 months in prison for the possession offense. (Id. at 75). The Court explained that there was a need to protect the public from the defendant, "who's shown a desire . . . to commit crimes again when he's out," and to deter others "who think it's a good idea to continue in the drug business" after going to prison. (Id. at 74). The Court stated that even "absent any sentencing guidelines, 121 months would be the appropriate sentence." (Id. at 75). The Fourth Circuit affirmed Defendant's conviction and sentence in 2021. (Doc. No. 36).

Defendant filed the pending motion for compassionate release on March 7, 2023. (Doc. No. 44). He has submitted records showing that he has taken three classes and completed one drug education program while serving his current sentence and that he has no disciplinary infractions. (Doc. No. 44-4, at 2–3; Doc. No. 44-5). Defendant has served less than four years in prison, or just over 37% of his full term. (Gov. Ex. 1, at 2). His projected release date is in May 2027. (Id. at 1).

## II. DISCUSSION

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy

6

statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals held that Section 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider the § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

The commentary to the policy statement states that extraordinary and compelling reasons include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his

7

term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In support of his motion, Defendant contends that his incarceration has been "more severe" than this Court intended when it sentenced him, that his sentence is "excessive" in light of changing policies toward marijuana, that his taking classes and showing "excellent conduct" in prison shows rehabilitation, and that he does not present a danger to the community. (Doc. No. 44, at 17–35 (Mot. Comp. Rel.)). For the following reasons, the Court finds that Defendant has not shown extraordinary and compelling reasons for a sentence reduction. First, Defendant had already contracted and recovered from COVID-19 when the Court sentenced him in August 2020. (Sent. Tr. 65). He has diabetes, but has been vaccinated, and the BOP website indicates that inmates have been offered "booster shots in accordance with CDC guidance." BOP website (www.bop.gov/coronavirus/) (under "COVID-19 Vaccine Implementation" last accessed Apr. 19, 2023). Defendant's facility is currently operating at level 1, with minimal modifications. (Id. (under "Modified Operational Levels)). Thus, Defendant has not shown that the conditions of confinement uniquely impacted him so as to create an extraordinary and compelling reason to reduce his sentence. See United States v. Brown, No. SAG-11-0050, 2023 WL 2931854, at *5 (D. Md. Apr. 13, 2023) (holding BOP's efforts to prevent transmission of COVID-19 "do not create extraordinary and compelling reasons to release all incarcerated individuals" and denying compassionate release to defendant convicted of trafficking marijuana and racketeering activities).

Next, in arguing that his marijuana offense should be punished less severely in light of changes to "the perceived gravity of marijuana offenses . . . in the last decade," Mot. Comp. Rel.

8

Case 3:19-cr-00364-MOC-SCR    Document 51    Filed 05/08/23    Page 8 of 11

23, Defendant fails to acknowledge that he was able to avoid cocaine and firearm charges through plea bargaining and that he was sentenced less than three years ago. He also does not account for the fact that his offense involved elaborate efforts, including multiple properties and vehicles, as well as the use of brokers and co-conspirators, to distribute a large quantity of marijuana. Illegal drug-trafficking activities still present a danger to the community. And the Court determined that, regardless of the sentencing guidelines, a 121-month sentence was "appropriate." (Sent. Tr. 75).

Defendant also claims rehabilitation and that he is not a danger to the community based on not receiving any disciplinary infractions and participating in "a myriad of programs and educational opportunities." (Mot. Comp. Rel. 30–32). "[A] defendant's compliance with prison rules is a minimum expectation of incarceration, not an extraordinary circumstance." United States v. Artis, No. 3:13CR218, 2023 WL 2469029, at *4 (W.D.N.C. Mar. 10, 2023). Defendant has shown participation in only three or four classes since he began serving his present sentence. (See Doc. No. 44-4, at 2–3). The other classes he lists are from his first stint in federal prison, Mot. Comp. Rel. 12–13, Doc. No. 44-4, which admittedly did not rehabilitate him. (See Sent. Tr. 64). Defendant also cites strong family support in arguing that he is not a danger to the safety of the community. While family support is important, one of Defendant's co-conspirators was a relative, and there are indications in the record that Defendant used family members to keep property out of his name. (See PSR ¶ 14; Doc. No. 23, at 1; Sent. Tr. 23). None of the reasons Defendant advances establishes an extraordinary and compelling reason to reduce his sentence or release him.

The Court further finds that even if Defendant had shown extraordinary and compelling reasons for compassionate release, consideration of the Section 3553(a) factors counsel strongly

against relief. This Court must consider the sentencing factors in 18 U.S.C. § 3553(a), as "applicable," as part of its compassionate release analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13CR133, 2021 WL 54364, at *4 (E.D. Va. 2021) (citing 18 U.S.C. § 3553(a)(1)–(2)). Section 3553(a) also instructs courts to consider the sentencing range established for the offense, as well as "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(4), (6).

Here, Defendant's prior 115-month sentence, which is only six months less than his current sentence, did not deter him from returning to trafficking drugs. Nor did the prior classes that he took while in prison. He has not shown that the three or four classes that he has taken recently show his rehabilitation or that the community would be safe if he were released. Defendant played a managerial role in a long-lasting drug trafficking conspiracy that involved numerous properties used as stash houses or trap houses and that involved a large quantity of drugs, including marijuana. He maintained and used numerous places to try to "dodge the police." (Sent. Tr. 68).

Defendant's assertion that his sentence was "excessive" or creates a disparity with other defendants is misplaced because he cites only defendants with the same criminal history category. He does not account for his offense level, the recency of his prior drug-trafficking conviction, or his prior criminal history that included other drug offenses, as well as firearm offenses, for which he received no criminal history points. (See PSR ¶¶ 44–52). Moreover, his

10

contention that he only received a 121-month sentence because of a Section 851 enhancement is incorrect. The United States withdrew the Section 851 Information with respect to the conspiracy offense, so Defendant faced only a five-year mandatory minimum sentence for that count and a maximum sentence of ten years for his possession with intent to distribute offense. (See Plea Agrmt. ¶ 5). In sum, the nature and circumstances of the offense, Defendant's history and characteristics, the need for deterrence and to protect the public, and the need for just punishment and to promote respect for the law all weigh in favor of denying Defendant release or any reduction in his sentence.

For all these reasons, the Court will deny Defendant's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 44), is **DENIED**.

Signed: May 8, 2023

Max O. Cogburn Jr
United States District Judge